UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALISON O.,

    Plaintiff,

    v.

ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY,

    Defendant.
_____/

No. C 13-4787 PJH

**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER, OSC RE PRELIMINARY INJUNCTION, AND EXPEDITED TRIAL**

    Plaintiff's application for a temporary restraining order, order to show cause re preliminary injunction, and expedited trial on the merits came on for hearing before this court on November 6, 2013.  Plaintiff appeared by her counsel Deborah A. Lieber, and defendant Anthem Blue Cross Life and Health Insurance Company ("Anthem") appeared by its counsel William E. von Behren.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the application as follows.

**BACKGROUND**

    Plaintiff suffers from eating disorders and other psychological illnesses.  She is covered by health insurance under an employee benefit plan ("the Plan") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Anthem is the insurer, and is also the Plan Administrator.

    On December 5, 2012, at the recommendation of her then-treatment team, plaintiff (who was 31 years old at the time) left treatment at a partial hospitalization program ("PHP") and entered residential treatment at Rain Rock Treatment Center ("Rain Rock"),

located in Eugene, Oregon.  Plaintiff alleges that she needed to increase her level of care from PHP to residential treatment because she was having significant difficulties maintaining her weight, eating enough food, and not purging whenever she ate, and because she continued to struggle with anxiety and depression.

At the time plaintiff was admitted to Rain Rock, she was diagnosed with anorexia nervosa (purging up to 15 times a day), major depressive disorder, anxiety disorder, and Post Traumatic Stress Disorder ("PTSD"), and also had a history of "exercise addiction." Anthem certified plaintiff's residential treatment as medically necessary from December 5, 2012 through January 6, 2013.

On January 4, 2013, Anthem sent plaintiff written notification that its medical reviewer, Timothy Jack, M.D., had concluded that residential treatment was no longer necessary, and that plaintiff could be safely treated in outpatient services.   Rain Rock appealed this denial on plaintiff's behalf.  On January 8, 2013, Anthem sent plaintiff written notification that its physician reviewer on appeal, Paul Keith, M.D., had determined that continued residential treatment from January 7, 2013 onward was not medically necessary, and that plaintiff could be stepped down to outpatient treatment.

On September 6, 2013, plaintiff was readmitted to Rain Rock in the residential treatment program, because of a significant increase in her eating disorder behaviors, including severe urges to purge, restrict, over-exercise, and self-harm.  She also reported that she "disassociates" approximately 80% of the day and is unable to maintain a job or finish school.  At the time of admission she was diagnosed with bulimia nervosa, major depressive disorder, severe PTSD, orthostatic dizziness, and headaches.  She weighed 97 pounds.  Anthem certified plaintiff's residential treatment as medically necessary from September 6, 2013 to September 30, 2013.

On September 24, 2013, personnel at Rain Rock received a telephone call from "Allyson A.," the case manager assigned to plaintiff's claim.  (Documents attached to FAC indicate that Rain Rock personnel had been in telephone contact with Allyson A. on an ongoing basis since September 4, 2013.)  Allyson A. indicated that plaintiff's residential

treatment was authorized through the night of September 29, 2013, "with denial of any more days as of September 30, 2013."

On September 26, 2013, Dr. Richard Cottrell from Anthem contacted Rain Rock for a "peer review." Following a brief telephone call, he advised that Anthem was denying benefits for plaintiff for a continued stay in residential treatment. He allegedly also indicated that Rain Rock could appeal. However, that same day, Allyson A. allegedly contacted Rain Rock and advised that Dr. Cottrell's review was an appeal, and that plaintiff had consequently exhausted her rights to any further appeal.

On September 27, 2013, Anthem sent plaintiff written notification formally denying her appeal for continued residential treatment as of September 30, 2013. The letter stated, "You can get eating disorder treatment using outpatient services" and that the letter was the "final notification of the disposition of your appeal."

Plaintiff alleges that since the time of this most recent denial, her medical condition has significantly deteriorated. She reports "extreme body image distress" and "extreme desires to restrict her intake to no more than 400 calories a day" as well as "intense desires to purge at least 3 times a day and exercise for hours at a time." She asserts that she has become increasingly depressed, and that she wants to die. She also reports that she has been engaged in self-harm (repeatedly hitting herself when she experiences flashbacks of previous sexual trauma).

Although Anthem denied plaintiff's claim as of September 30, 2013, plaintiff remains in the residential treatment program at Rain Rock. She alleges that she is unable to eat food without constant supervision of staff at Rain Rock, and asserts that it is the opinion of her treatment team that if she were discharged from residential care, she would be at extreme risk of killing herself through her behaviors of restriction, purging, and self-harm, or during one of her periods of "disassociation." Plaintiff asserts that as a result of Anthem's denial of her continuing residential treatment at Rain Rock, she has no means to pay in order to remain in treatment.

Plaintiff filed this action on October 15, 2013, alleging that Anthem had wrongfully

denied her benefits; failed to adequately investigate the merits of her claim; failed to provide her with a full and fair review as mandated by ERISA regulations (29 C.F.R. § 2560.503-1(h)(3)(iii), (h)(2)(ii)[1]); failed to provide adequate independent evaluation of her claim for benefits; failed to adequately describe what additional information she would need to submit to perfect her claim; and failed to provide sufficient documents and information so that she could meaningfully appeal, in violation of 29 C.F.R. § 2560.503-1(h)(2)(ii). She filed a first amended complaint ("FAC") on October 28, 2013, to name the proper defendant.

In the FAC, plaintiff asserts three causes of action –

---

[1] In the FAC, plaintiff repeatedly cites 29 C.F.R. § 2560.501-1 (a non-existent section) instead of what it appears she intended to cite – 29 C.F.R. § 2560.503-1. Assuming that this is what plaintiff intended, the relevant portions of subsection (h) read as follows:

(h) Appeal of adverse benefit determinations

(2) Full and fair review. Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures –

. . .

(ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

. . .

(3) Group health plans. The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures –

. . .

(iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;

29 C.F.R. § 2560.503-1(h)(2)(ii), (h)(3)(iii).

4

(1) a claim for denial of benefits for the first admission to Rain Rock (December 2012), alleging violations of 29 C.F.R. § 2560.503-1(h), for which plaintiff seeks damages in the amount of medical bills incurred, plus attorney's fees and costs, plus clarification of her right to future benefits under the Plan;

(2) a claim under 29 U.S.C. § 1132(a)(1)(B) for denial of benefits for second admission to Rain Rock (September 2013), also alleging violations of 29 C.F.R. § 2560.503-1(h), for which plaintiff seeks an order clarifying that she is entitled to benefits, and also seeks attorney's fees and costs; and

(3) a claim for equitable relief under "29 U.S.C. §§ 1132(a)(1)(B)(3)(A)(B)(i)(ii)," FAC ¶ 39,[2] pursuant to which plaintiff seeks restitution of all past benefits due; and "a mandatory temporary restraining order and injunction requiring [Anthem] to immediately qualify [p]laintiff for medical benefits due and owing under the Plan" – specifically, to approve her request for continuing residential treatment at Rain Rock until her treatment team determines she may be safely discharged to a lower level of care – or, in the alternative, "set this matter for Expedited Trial pursuant to" Federal Rule of Civil Procedure 65(a)(2).

On October 25, 2013, plaintiff filed the present application for a temporary restraining order, preliminary and permanent injunction, and expedited trial on the merits.

## DISCUSSION

A.   Legal Standard

Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977); Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

---

[2] It is not entirely clear which section of § 1132 plaintiff intended to cite in support of the third cause of action for injunctive relief. She cites § 1132(a)(3) in the prayer for relief.

5

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008); see also Munaf v. Geren, 553 U.S. 674, 689-90 (2008). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted).

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter, 555 U.S. at 20. Alternatively, the plaintiff may demonstrate that the likelihood of success is such that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor," so long as the other two elements of the Winter test are met. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

Showing "serious questions going to the merits" requires more than establishing that "success is more likely than not," and it requires a plaintiff to demonstrate a "substantial case for relief on the merits." Leiva–Perez v. Holder, 640 F.3d 962, 967 (9th Cir. 2011). And even where success on the merits is likely or "serious questions" are raised an injunction "is not a remedy which issues as of course." Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982). A "serious question" is one on which the plaintiff "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

B.  Plaintiff's Motion

Plaintiff seeks an order requiring Anthem to reverse its prior denial of her claim, and certify as medically necessary her request for continued residential treatment at Rain Rock from September 30, 2013 forward, until her treatment team determines she may be safely discharged. In the alternative, plaintiff requests that the court "advance" the trial on the merits, and consolidate it with the hearing on the motion for the temporary restraining order and preliminary injunction, pursuant to Rule 65(a)(2).

Plaintiff argues that she is likely to succeed on the merits of her claim, because an

1  examination of her medical records[3] shows that her continued residential treatment from
2  September 30, 2013 forward, until her treatment team decides she can transition
3  "downward" to outpatient treatment, is medically necessary, and thus, that Anthem's prior
4  denial must be overturned.  She asserts that in denying her request for continued
5  residential treatment, Anthem repeatedly violated ERISA and ignored the medical
6  evidence.

7  Plaintiff also contends that she will suffer irreparable harm if Anthem is not ordered
8  to approve her request for continued residential treatment.  In support, she cites the
9  declaration of her treating psychiatrist at Rain Rock, Dr. Joseph P. Arpaia, who states that
10 "[t]ime is of the essence in obtaining approval from Anthem and overturning its prior denial
11 of Alison's continued residential treament," and that in his medical opinion, "Alison's health
12 is being compromised by Anthem's denial and her continued stay in residential treatment is
13 mandatory if she is expected to overcome and survive her illness."  Declaration of Joseph
14 P. Arpaia ¶ 18.

15 Plaintiff asserts further that the equities balance in her favor, as she simply wants
16 Anthem to provide the benefits promised in her Plan.  She claims that there is not a single
17 equity that balances in favor of Anthem.

18 Finally, plaintiff argues that an injunction is in the public interest, because this
19 injunction "will send a message to Anthem and other insurers and health service plans."
20 She asserts that "[p]eople deserve to be treated as individuals, to have their medical claims
21 sufficiently reviewed by their insurer and given a chance of survival" and that "[a]n insurer
22 or health service plan cannot disregard medical evidence simply because it is inconsistent
23 with the result the plan wants to reach or requires approval of extended and costly
24 treatment."

---

[3] The complete administrative record has not been submitted. Plaintiff has requested if from Anthem, and is awaiting a response.  At the hearing, counsel for Anthem stated that the entire administrative record has not yet been compiled.  Plaintiff has attached copies of some of her medical records and other key documents to the FAC and her motion papers. She asserts that these records are sufficient to establish likelihood of success on her claim.

1  Anthem opposes the motion, arguing that plaintiff cannot satisfy the requirements for
2  injunctive relief, in that she cannot show that she is likely to succeed on the merits, cannot
3  show that she is likely to be irreparably harmed in the absence of a temporary restraining
4  order, and cannot show that a temporary restraining order is in the public interest.
5  Moreover, Anthem asserts, there is no basis for an accelerated trial.

6  The court finds that the application for a temporary restraining order must be
7  DENIED because plaintiff has not established a likelihood of success on the merits of her
8  claims.  Because the court denies the TRO application, the court also denies the request
9  for an order to show cause re preliminary injunction.

10  The TRO application appears to seek relief under the second and third causes of
11  action alleged in the FAC.  With regard to the second cause of action, in order to determine
12  whether the benefits decision should be reversed – which is the substance of the "likelihood
13  of success on the merits" inquiry in this case – the court must apply one of two standards.
14  If the plan does not "confer discretion on the administrator 'to determine eligibility for
15  benefits or to construe the terms of the plan,' a court must review the denial of benefits de
16  novo."  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962-63 (9th Cir. 2006) (en
17  banc) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  If, on the
18  other hand, the plan "does confer discretionary authority as a matter of contractual
19  agreement, then the standard of review shifts to abuse of discretion."  Id.

20  It is unclear from the documents submitted by plaintiff which standard of review
21  applies.  At the hearing, counsel for Anthem stated that the Plan does not confer discretion
22  on the Administrator, and thus that the decision regarding plaintiff's eligibility for residential
23  treatment must be reviewed de novo.

24  In a de novo review of an ERISA claim, the court "evaluates whether the
25  administrator correctly or incorrectly denied benefits," and does so "based on the evidence
26  in the adminstrative record."  Opeta v. Northwest Airlines Pension Plan for Contract
27  Employees, 484 F.3d 1211, 1213 (9th Cir. 2007).  Where the court deems it necessary, it
28  may also consider limited extrinsic evidence.  Id.; see also Muniz v. Amec Const. Mgmt,

Inc., 623 F.3d 1290, 1297 (9th Cir. 2010).

At a minimum, the court is unable to conduct a de novo review in the absence of the complete administrative record. What is presently before the court is a selection of health records and other documents that plaintiff's counsel asserts are sufficient for the court to make the requested determination. However, at the hearing, counsel for Anthem indicated that Anthem disputes that these documents submitted by plaintiff constitute the complete administrative record.

With regard to the third cause of action, to the extent that plaintiff is asserting a claim for equitable relief under ERISA § 502(a)(3)(B)'s "catch-all" provision, seeking an order requiring Anthem to reverse its benefits decision, such relief is not available because she has a legal remedy under § 502(a). See Varity Corp. v. Howe, 516 U.S. 489, 512-15 (1996) (holding that § 502(a)(3) is a catchall provision that offers appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere remedy, and that where Congress has provided a remedy, the "catchall" equitable relief provision has no application); see also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 221 n.5 (2002).

Were this simply a matter of pleading – with Anthem arguing that plaintiff cannot plead a claim for relief under § 502(a)(3) – then the result might be different, given the general rule that allows plaintiffs to plead claims in the alternative. But because plaintiff is seeking an order granting injunctive relief at this juncture, she cannot obtain such relief under § 502(a)(3) because there are already remedies for the denial of claims elsewhere in the statute.

A further serious impediment to granting the relief plaintiff seeks in this application is that plaintiff is not seeking to maintain the status quo. The sole purpose of a temporary restraining order is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction. Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974). In turn, a preliminary injunction is "a device for preserving the status quo and preventing the irreparable loss of rights before judgment."

U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010) (quotation and citation omitted). "Status quo" means the last uncontested status that preceded the pending controversy. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000).

Here, Anthem made a determination that residential treatment at Rain Rock was not medically necessary after September 30, 2013, but that treatment in a program of partial hospitalization was medically necessary. Plaintiff is not seeking to preserve the status quo pending a determination on the merits. Rather, she is seeking a mandatory injunction that would alter the status quo by requiring Anthem to reverse its decision regarding benefits for residential treatment. Thus, to grant plaintiff's request would be in effect to give her the ultimate relief she seeks in this case, but without a full and fair review of the administrative record.

## CONCLUSION

In accordance with the foregoing, plaintiff's application for a temporary restraining order and order to show cause re preliminary injunction is DENIED. The request for an expedited trial is also DENIED. However, as stated at the hearing, the court will entertain a stipulated request for early cross-motions for either judgment on partial findings under Federal Rule of Civil Procedure 52 or summary judgment under Federal Rule of Civil Procedure 56.

**IT IS SO ORDERED.**

Dated: November 8, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge